UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

REGINALD DEWAYNE NELSON,               )
# 233909,                                                    )
                                                                   )
                                Petitioner,          )          Case No. 1:15-cv-251
                                                                   )
v.                                                              )          Honorable Paul L. Maloney
                                                                   )
DEWAYNE BURTON,                              )
                                                                   )
                                Respondent.        )
_____)

## **REPORT AND RECOMMENDATION**

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254.   On July 19, 2011, a Muskegon County Circuit Court jury found petitioner guilty of possession with intent to deliver fifty to 450 grams of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(iii), second subsequent offense, MICH. COMP. LAWS § 333.7413(1)(a); possession of marijuana with intent to deliver, MICH. COMP. LAWS § 333.7401(2)(d)(iii); and possession of a firearm by a felon (felon in possession), MICH. COMP. LAWS § 750.224f.   On September 6, 2011, petitioner was sentenced as a third-offense habitual offender, MICH. COMP. LAWS § 769.11, to concurrent prison terms of life imprisonment without the possibility of parole for his second conviction of possession with intent to deliver fifty to 450 grams of cocaine, four to eight years' imprisonment for his possession with intent to deliver less than five kilograms of marijuana conviction, and four to ten years' imprisonment for his felon-in-possession conviction.

After unsuccessful attempts to overturn his convictions in Michigan's courts, petitioner filed his federal habeas corpus petition.  He asks this Court to overturn his convictions on grounds rejected by the Michigan Court of Appeals:

I.     Petitioner's Fourteenth Amendment right to due process of law was violated where his possession with intent to deliver cocaine and marijuana convictions were obtained through the use of insufficient evidence, contrary to *Jackson v. Virginia*.

II.    Petitioner's Sixth Amendment confrontation rights and his Fourteenth Amendment due process rights to a fair trial, were grossly violated, where the prosecution refused to identify and/or produce a confidential informant who was the linchpin of the charges against petitioner, during trial, so that petitioner could confront his accuser, even after knowing that this confidential informant's statement to police was testimonial, contrary to *Crawford v. Washington*, *Davis v. Washington*, and *Roviaro v. United States*.

III.   Petitioner's Fourteenth Amendment right to due process of law and a fair trial, were violated, through multiple acts of prosecutorial misconduct, where the state impermissibly used confidential informant information given to police, as direct evidence of petitioner's guilt without producing this informant during trial, and the state improperly questioned petitioner in a manner that was unprofessional, improper, intimidating and highly prejudicial, contrary to *Berger v. United States* and *Donnelly v. DeChristoforo*.

IV.    Petitioner was deprived of his Sixth Amendment right to effective assistance of counsel when his trial attorney "failed to subpoena petitioner's alibi witness, and failed to investigate and interview a key witness; counsel was also ineffective for failing to object to the prosecutor's improper cross-examination of petitioner, contrary to *Strickland v. Washington*."

(ECF No. 1, PageID.4-5).

Respondent argues that the petition should be denied because all grounds raised by petitioner lack merit.  (ECF No. 12).  Further, respondent argues that Ground III and the Confrontation Clause component of Ground II are barred by

procedural defaults and petitioner has not established grounds to overcome those defaults.[1]  (*Id.* at PageID.218-21, 224-27, 231-32, 241).

Judge Maloney has referred the matter to me for all purposes, including the issuance of a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts.  After review of the state-court record, I conclude petitioner has not established grounds for federal habeas corpus relief.  Petitioner has not shown that the state court decision rejecting the grounds raised in the petition was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  I recommend that the petition be denied on the merits.

## Standard of Review

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt."  *Bell v. Cone*, 543 U.S. 447, 455 (2005)

---

[1]The Supreme Court has indicated that this Court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  In the present case, the grounds raised by petitioner are meritless, so a detailed analysis of the complicated procedural default issues is unnecessary.

(citations omitted).  "AEDPA requires heightened respect for state court factual and legal determinations."  *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence."  *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied.  28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).  AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."  *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  "Section 2254(d) reflects that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal."  *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with

respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings – not dicta – of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court.). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' " and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' ").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

## Proposed Findings of Fact

### A.    Circuit Court Proceedings

#### 1.    Pretrial Motion

Petitioner's attorney filed a number of pretrial motions, including a motion to have the court order the prosecution to reveal the confidential informant referred to in the search warrant for the residence at 209 East Columbia in Muskegon Heights, Michigan. On March 14, 2011, the trial court judge conducted a hearing on the

motion.  (ECF No. 13-6, PageID.309-15).  On March 21, 2011, the judge entered his opinion and order denying the motion.  He found that the identity of the confidential informant, standing alone, would not be relevant because he was not a witness to any crime that occurred on December 4, 2010, the date the controlled substances were seized under the search warrant.  (ECF No. 13-17, PageID.1537).  The content of the communication made by the confidential informant to the police was that he saw cocaine inside 209 East Columbia within 48 hours of December 4, 2010.  The court was not prepared to adopt a rule that, "every time a confidential informant tells the police that he saw drugs in a residence, the confidential informant's identity must be disclosed so that he can reveal the people who were in the drug house, in order to determine if those individuals were the dealers, as opposed to a defendant who might have been absent at the time of the confidential informant's observations."  (*Id.*).  Further, the judge found:

> [T]he mere possibility that persons other than [petitioner] were in 209 E. Columbia at the time of the confidential informant's observation has little relevance as to whether or not the controlled substances were under the exclusive control or joint control of [petitioner]. Notwithstanding, the prosecution still bears the burden of proof beyond a reasonable doubt that [petitioner] actually possessed the controlled substances.

(*Id.*).

        2.   <u>Trial</u>

Petitioner's trial began on July 12, 2011, and it concluded on July 19, 2011, with the jury's verdict convicting petition of the offenses identified above.  (Trial Transcripts, TT I- TT V, ECF No. 13-10 through 13-15).

The West Michigan Enforcement Team (WEMET) is a multi-jurisdictional law enforcement drug task force.   On December 4, 2008, they received a tip from a confidential informant regarding illegal drugs observed at 209 East Columbia in Muskegon Heights, Michigan, and the police obtained and executed a search warrant. (TT II at 5-7, 111, ECF No. 13-11, PageID.617-19, 723).   The house at 209 East Columbia was leased to petitioner.   (TT II at 115-34, ECF No. 13-11, PageID.730-46; TT IV at 39-40, 74-75, 83, ECF No. 13-13, PageID.1121-22, 1156-57, 1165).   The door was locked and forced entry was required.   (TT I at 196-97, ECF No. 13-10, PageID.556-57).  The house was small and sparsely furnished.  (TT II at 8-9, ECF No. 13-11, PageID.618-19).

In the kitchen, inside a cold air vent underneath the stove, police found a bag with a plastic container inside that contained 247 grams of cocaine.  (TT I at 235, ECF No. 13-10, PageID.595; TT II at 12-14, 93, ECF No. 13-11, PageID.624-26, 705). Police discovered four separate packages of marijuana inside the freezer.  (TT II at 57, 199, ECF No. 13-11, PageID.669, 811).  A Coffee-mate container found in the kitchen had a false bottom.   Crack cocaine was found inside the false bottom, individually packaged for sale on the street.   Police recovered a latex glove from the trash.  Inside the glove was a mixture of DNA consistent with petitioner being one of the contributors.  A box of gloves was found in a drawer next to the refrigerator.  (TT II at 52-58, 199, ECF No 13-11, PageID.664-70, 811; TT III at 72-106, ECF No. 13-12, PageID.902-36).

-8-

In the bedroom, police found a duffle bag containing a plastic baggie of marijuana and men's clothing.  (TT II at 15-16, ECF No. 13-11, PageID.627-28). There was a coffee grinder on a small table.  Testimony indicated that such grinders are used to make cocaine into a finer powder.  (*Id.* at 17-18, PageID.629-30).

On an entertainment center, police found bottles of Inositol, a product used as a cocaine cutting agent.  (*Id.* at 18-19, PageID.631-32).  On the same entertainment center, police found mail addressed to petitioner, several items such as utility bills having the 209 East Columbia address, and some mail had another address, petitioner's mother's address at 2030 Sixth Street, Muskegon Heights, Michigan.  (*Id.* at 19-40, PageID.631-52).  Petitioner was on parole in 2008, and he had given his mother's residence at 2030 Sixth Street as his address.  He never advised his parole agent that he had leased the house 209 East Columbia.  (TT I at 167-72, ECF No. 13-10, PageID.527-32).  Other than a bulk mail flier, none of the mail found at 209 East Columbia was addressed to anyone other than petitioner.  (TT II at 112, ECF No. 13-11, PageID.724).

Police found a plate, spoon, and a bag containing cocaine residue on a shelf of the entertainment center.  The fingerprint from petitioner's left middle finger was found on that plate.  (TT II at 42-43, ECF No. 13-11, PageID.654-55; TT III at 37, 44, 46, ECF No. 13-12, PageID.867, 874, 876).  Police also recovered two digital scales of a type commonly used in the drug trade.  (TT II at 46-48, ECF No. 13-11, PageID.658-60).

Petitioner wears size 12 shoes.  In the bedroom at 209 East Columbia, police found three shoeboxes for size 12 shoes and a pair of size 12 shoes.  A black handgun was found underneath the bed.  The gun had been reported as stolen from a location near the Michigan/Indiana border.  A total of six casings were in the gun, five live rounds and one spent round.  (TT I at 219, ECF No. 13-10, PageID.579; TT II at 49-52, 148-49, ECF No. 13-11, PageID.661-64, 760-61).

In the basement, police found two gallon size bags, which contained a total of thirteen sandwich-size bags.  Each of the smaller bags contained between 28 and 29 grams of marijuana (approximately an ounce), a weight typical for sale.  (TT I at 235-37, PageID.595-97; TT II, 59-61, 108, ECF No. 13-11, PageID.671-73, 720)

A search warrant was obtained for petitioner's mother's residence at 2030 Sixth Street, Muskegon Heights, Michigan.  No mail addressed to petitioner was found at that location.  (TT I at 195-99, ECF No. 13-10, PageID.555-559; TT III at 145, ECF No. 13-12, PageID.975).  Police found no evidence that petitioner had been living in the basement.  (TT II at 63-65, ECF No. 13-11, PageID.675-77; TT III at 143, 148, ECF No. 13-12, PageID.973, 978).  Petitioner's mother testified.  She denied telling WEMET officers that petitioner did not live with her and that he was living at 209 East Columbia.  (TT III at 5-18, ECF No.13-12, PageID.835-48).  The prosecution provided impeaching testimony through the officer who had received her statements.  (TT III at 145-48, ECF No. 13-12, PageID.975-78).

A search warrant was obtained for a residence at 1356 Ducey in Muskegon, Michigan. A white Chevy Blazer was found parked at that residence. Petitioner and

Katwanna Harris had a child together.  The baby had been born in October 2008, and Ms. Harris and the baby were living at 1356 Ducey.  In the nursery, police found petitioner's lease agreement for the property at 209 East Columbia.  Police also discovered a black duffel bag on the floor in the closet. Inside the bag were two handguns and nine or ten boxes of ammunition.  (TT I at 227-30, ECF No. 13-10, PageID.587-90; TT II at 65-69, 201-15, ECF No. 13-11, PageID.677-81, 813-27; TT III at 13, ECF No. 13-12, PageID.843; TT IV at 39, ECF No.13-13, PageID.1121)

Petitioner owned a white Chevy Blazer.  (TT II at 125, ECF No. 13-11, PageID.737; TT III at 147, ECF No. 13-12, PageID.997).  A white Chevy Blazer had been seen at 209 East Columbia when the police began their surveillance.  It was registered to Ms. Harris.  A black male drove the Blazer from 209 East Columbia, and the police lost it in traffic.  The white Blazer was found at 1356 Ducey and a small baggie of cocaine was found on the floorboard.  (TT I at 240, ECF No. 13-10, PageID.600; TT II, at 87, 208, ECF No. 13-11, PageID.699, 820; TT III at 138-42, ECF No. 13-12, PageID.968-72; TT IV at 44-46, ECF No. 13-13, PageID.1126-28).

Petitioner failed to appear for his December 9, 2008, appointment with his parole agent, and an absconder warrant was issued.  Petitioner was arrested in Dallas, Texas on June 14, 2010.  (TT I at 175-79, ECF No. 13-10, PageID.535-39).

During the cross-examination of WEMET Detective Lieutenant Andrew Frias, petitioner's attorney attacked the credibility of the investigation and implied that petitioner was not connected to the house at 209 East Columbia.  (TT III, 152-55, 173-76, ECF No. 13-12, PageID.982-85, 1003-06).  On redirect, Detective Frias testified

that the confidential informant was reliable.  Detective Frias also testified that the informant had advised him that he/she had been in the house at 209 East Columbia within 48 hours of the search warrant being executed; that the informant saw the drugs; and that petitioner sells drugs.  (*Id.* at 176-79, PageID.1006-09).

Petitioner's earlier criminal conviction for possession with intent to deliver cocaine stemmed from a 2002 traffic stop.  On March 5, 2002, he was arrested in Berrien County.  He was driving and found with $2300 in cash, and a large amount of marijuana and cocaine.  (TT II, 135-44, ECF No. 13-11, PageID.747-56).  A Berrien County jury convicted petitioner of possession with intent to deliver more than fifty grams of cocaine.  (TT II, at 170-71, PageID.782-83).

Petitioner testified.  (TT IV, 89-139, ECF No. 13-13, PageID.1171-1221).  He conceded that he had been convicted of a controlled substances crime in 2002, and that, in 2007, he had been released from prison on parole.  (*Id.* at 89-92 PageID.1171-74).  He admitted signing the lease for the house at 209 East Columbia.  (*Id.* at 121, PageID.1203).  He testified that he never spent a night at 209 East Columbia, but he went there to lift weights, play cards, and barbeque.  (*Id.* at 128-29, PageID.1210-11).  He stated: "just because the mail is there [at 209 Columbia] doesn't mean that I lived at that house or controlled it[.]"  (*Id.* at 104, PageID.1186).  Petitioner testified that many people came to this house rather than going out on the streets.  (*Id.* at 101, 128, PageID.1183, 1210).

Petitioner testified that he was not the person seen on December 4, 2008, driving away from 209 East Columbia in the white Chevy Blazer.  (*Id.* at 124,

PageID.1206).  He testified that he had absolutely no idea how drugs got into that house.  (*Id.* at 128-29, 136, PageID.1210-11, 1218).  Petitioner testified:  "All I'm saying is I didn't have control over this house.  I didn't have control over those drugs. I didn't sell no drugs, and I wasn't there that day that the confidential informant said I was there or – or whatever." (*Id.* at 139, PageID.1221).  Petitioner admitted that he fled Michigan, and that he was arrested two years later in Texas.  (*Id.* at 118,123, PageID.1200, 1205).

On July 19, 2011, the attorneys delivered their closing arguments.  (TT V, 3-65, ECF No. 13-14, PageID.1230-92).  The prosecutor argued that the prosecution had carried its burden of proving all of the elements of the crimes charged beyond a reasonable doubt.  (*Id.* at 3-35, PageID.1230-62).  In his argument regarding the course of events including the surveillance, search warrants, seizure of the illegal drugs, and petitioner's eventual arrest in Texas, the prosecutor mentioned the confidential informant's tip that there was cocaine at 209 East Columbia and that petitioner sold cocaine.  (*Id.* at 11, PageID.1238).  Further, in addressing defense assertions that the evidence against petitioner was fabricated and that the police were lying, the prosecutor made a second reference to the confidential informant, arguing that it was highly unlikely that the informant was "[c]ompletely made up." (*Id.* at 32, PageID.1259).

The trial court judge denied petitioner's attorney's motion for a mistrial.  Any objection to the references to the confidential informant in the prosecutor's closing argument were untimely and his arguments had been based on reasonable inferences

from the evidence.  (*Id.* at 36-40, PageID.1263-67).

Petitioner's attorney argued that the jury should find that petitioner was not involved, that he did not have control of the house at 209 East Columbia, and that he was not in control of any drugs or guns.  (*Id.* at 40-61, PageID.1267-88).  He argued: "This is a big case.  This is a major drug dealer.  They didn't get him.  They took the word of some confidential informant who they won't even tell us about, and they want you to take his word that this is who – this man got targeted, is the man who did all of this.  Don't buy it for a minute.  Don't buy it."  (*Id.* at 52, PageID.1279).  When petitioner's attorney argued that the confidential informant knew that he was facing prison and wanted his case handled in some special way, the prosecutor objected and the objection was sustained.  Petitioner's attorney could draw reasonable inferences from the evidence in the record, but there was no such evidence regarding the confidential informant.   (*Id.* at 52-53,  PageID.1279-80).   Petitioner's attorney's argument concluded by focusing on the pivotal issue of whether the prosecution had carried its burden of proving beyond a reasonable doubt that petitioner had control of the house at 209 East Columbia.  (*Id.* at 60, PageID.1287).

The prosecutor gave a very brief rebuttal.  (*Id.* at 61-65, PageID.1288-92).  He noted in passing that there was nothing unusual about police using information obtained from a confidential informant.  His primary rebuttal argument was:  "The evidence supports quite definitely the conclusion that this defendant was in control of 209 East Columbia.  That the defendant was in the business of selling drugs.  Not using, but selling.  The evidence clearly supports that."  (*Id.* at 62, PageID.1289).

-14-

The trial court judge gave the jury its instructions. (TT V, 65-89, 93-95, ECF No. 13-14, PageID.1292-1316, 1320-22). Among other things, he instructed the jury that the evidence included only the sworn testimony of witnesses and the exhibits admitted into evidence. The jury was reminded that the lawyers' statements and arguments were not evidence. (*Id.* at 68, PageID.1295).

On July 19, 2011, the jury returned its verdict finding petitioner guilty on Counts I through III: possession with intent to deliver fifty to 450 grams of cocaine, second subsequent offense; possession of marijuana with intent to deliver, and felon in possession of a firearm. The jury found petitioner not guilty on Count IV, a felony firearm charge. (TT V, 95-100, ECF No. 13-14, PageID.1322-27).

On August 22 and September 6, 2011, petitioner received a sentencing hearing. He was sentenced as previously indicated. (ECF No. 13-15; ECF No. 13-16, PageID.1395-98; Judgment of Sentence Commitment to Department of Corrections, ECF No. 13-17, PageID.1414).

## B.    Subsequent Proceedings

Petitioner's appellate counsel raised a number of issues on direct appeal, including the issues now found in Grounds I, II, and III of petitioner's habeas corpus petition. (ECF No. 13-17, PageID.1443-44). Petitioner raised the issues now found in Ground IV in his *pro se* brief on direct appeal. (ECF No. 13-17, PageID.1596). On October 17, 2013, the Michigan Court of Appeals rejected all of the arguments raised on appeal for lack of merit and affirmed petitioner's convictions. (ECF No. 13-17, PageID.1401-12).

Petitioner sought leave to appeal in Michigan's highest court. On

March 28, 2014,  the Michigan Supreme Court denied petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed by the court.   (ECF No. 13-18 at PageID.1613).

On March 11, 2015, petitioner filed his habeas corpus petition.  (ECF No. 1).

## Discussion

## I.    Sufficiency of the Evidence to Support Petitioner's Convictions

Ground I is petitioner's argument that his Fourteenth Amendment right to due process of law was violated because the evidence at trial was insufficient to support the jury's verdict finding him guilty of possession with intent to deliver cocaine and marijuana.  (ECF No. 1 at PageID.4; *see also* Petitioner's Brief at 13-28, ECF No. 2, PageID.43-58).

A section 2254 challenge to the sufficiency of evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*; *see Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*) (*Jackson v. Virginia* "makes clear that it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial.").  Issues of credibility may not be reviewed by the habeas court under this standard.   *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).

-16-

Rather, the habeas court is required to examine the evidence supporting the conviction in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011).

The Michigan Court of Appeals ruled directly on this claim. Review of this issue must be conducted under the AEDPA standard, which the Sixth Circuit has described as "very deferential." *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007). Review of challenges to the sufficiency of evidence under the *Jackson v. Virginia* standard proceeds under the "unreasonable application" prong of AEDPA. *See Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008). Such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of *Jackson v. Virginia*. *See Keys v. Booker*, 798 F.3d 442, 450 (6th Cir. 2015). Review "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007). This standard presents a "nearly insurmountable hurdle" for the habeas petitioner. *Davis v. Lafler*, 658 F.3d at 534. "Adding to this extremely high bar are the stringent and limiting standards of AEDPA." *Id.*

The Sixth Circuit has summarized the "double layer of deference" given the State-court decisions in the context of sufficiency-of-the-evidence claims:

First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most

-17-

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable.

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

The Michigan Court of Appeals articulated the appropriate standard under *Jackson v. Virginia*, citing state cases adopting this standard. The Court of Appeals found that the evidence of constructive possession of the cocaine and marijuana was sufficient to support the jury's verdict:

Contrary to defendant's assertions, the evidence was sufficient for a rational jury to find, beyond a reasonable doubt, that defendant constructively possessed the cocaine and marijuana. Defendant leased the home at which the cocaine and marijuana were found, and after he stopped making lease payments, he was not evicted and was still allowed to possess the home. There was also testimony that only those who control a house where large quantities of drugs were found typically have access to that house and defendant admitted that he went to the house on occasion. *See Wolfe*, 440 Mich. at 521 (noting that evidence that a defendant controls the location at which drugs are found is circumstantial evidence that the defendant constructively possessed the drugs). Further, the utilities were registered to defendant, mail addressed to defendant was delivered to that address, and several documents containing defendant's name were found at the house. *See People v Hardiman*, 466 Mich 417, 423; 646 NW2d 158 (2002) (noting that mail addressed to the defendant at a particular residence was circumstantial evidence that the defendant had constructive possession of the drugs found at that residence). These documents were found in a room with scales used to weight drugs and Inositol used to cut cocaine. Size 12 shoes were also found in the home and there was evidence that

-18-

defendant wore size 12 shoes. *See id.* (noting that finding the defendant's clothing near the area where the drugs are recovered is circumstantial evidence that the defendant constructively possessed the drugs). There was also evidence that the white Blazer, which defendant occasionally drove, was seen at the house shortly before the drugs were seized. Moreover, defendant fled the jurisdiction immediately after the house was searched, which is probative of his consciousness of guilt. *See People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Additionally, with regard to the cocaine, defendant's fingerprint was on a plate that tested positive for cocaine residue. And, he could not be excluded as a donor to DNA found on a glove that contained cocaine residue. Accordingly, the totality of the circumstances demonstrates that there was "a sufficient nexus" between defendant and the cocaine and marijuana. *Wolfe*, 440 Mich at 521.

(Op. at 2-3, ECF No. 13-17, PageID.1402-03).

Petitioner has not carried his heavy burden under 28 U.S.C. § 2254(d)(1). His reliance on decisions circuit and district court decisions (*See* Petitioner's Brief at 23-28, ECF No. 2, PageID.53-58).is misplaced. "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012)); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

There was sufficient evidence to support the jury's verdict finding that petitioner constructively possessed both the cocaine and marijuana. Further, petitioner has not and cannot demonstrate that the decision of the Michigan Court of Appeals rejecting his challenge to the sufficiency of the evidence was an unreasonable application of the *Jackson v. Virginia* standard. Ground I does not provide a basis for

-19-

federal habeas corpus relief.

## II.    Due Process and Confrontation Clause

Ground II is petitioner's argument that his Sixth Amendment confrontation

rights and his Fourteenth Amendment due process rights to a fair trial were violated"

> [W]here the prosecution refused to identify and/or produce a confidential
> informant who was the linchpin of the charges against petitioner, during
> trial, so that petitioner could confront his accuser, even after knowing
> that this confidential informant's statement to police [was] 'testimonial,'
> contrary to *Crawford v. Washington*, *Davis v. Washington*, and *Roviaro
> v. United States*.

(ECF No. 1, PageID.4-5; *see also* Petitioner's Brief at 29-45, ECF No. 2, PageID.59-

75).

### A.  Due Process

The Michigan Court of Appeals found no violation of petitioner's due process

rights because the refusal to identify and provide the confidential informant did not

deprive petitioner of a fair trial.  (Op. at 4-5, ECF No. 13-17, PageID.1404-05).

Petitioner invokes the Supreme Court's decision in *Roviaro v. United States*,

353 U.S. 53, 59 (1957).  But that decision is inapposite here.  *Roviaro* was an exercise

of the Supreme Court's supervisory power over lower federal courts.  *Id.* at 59-61; *see*

*Phillips v. Caldwell*, 482 F.3d 1348, 1349 (6th Cir. 1973) (*Roviaro*'s ruling "was made

in a case on direct appeal and in the Court's supervisory jurisdiction, not as a matter

of constitutional law.").   "Because habeas corpus lies only for violation of the

Constitution or laws of the United States, it is highly doubtful whether a claim under

*Roviaro* is cognizable in habeas corpus."   482 F.3d at 1349; *see also McDaniel v.*

*Hoffner*, No. 17-1453, 2017 WL 4857554, at *2 (6th Cir. Sept. 12, 2017) ("To the extent

that [petitioner] is claiming a constitutional violation based on the trial court's order denying his motion to compel disclosure of the confidential informant's identity, he has not stated a claim for federal habeas corpus relief.").

Even assuming that *Roviaro* had constitutional underpinnings, it would not provide a basis for granting petitioner's request for habeas corpus relief.  What is "usually referred to as the informer's privilege," is in reality "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law."  *Roviaro*, 353 U.S. at 59.

> The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.  The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.
>
> * * *
>
> Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.
>
> * * *
>
> [N]o fixed rule with respect to disclosure is justifiable.  The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 59-62.  Thus, even in cases involving a direct appeal of a federal criminal conviction, "[t]he decision whether to disclose the identity of confidential informants

is generally left to the discretion of the trial court." *United States v. Flowers*, Nos. 15-3988, 15-3990, 15-3991, 15-4003, 15-4028, __ F. App'x __, 2017 WL 4785960, at *12 (6th Cir. Oct. 24, 2017) (citing *United States v. Cummins*, 912 F.2d 98, 103 (6th Cir. 1990)).

Here, the Michigan Court of Appeals considered the appropriate factors and it found no error.  (Op. at 4, ECF No. 13-17, PageID.1404).  It rejected petitioner's argument that he should have been permitted to call the confidential informant as a witness so that the informant could testify that he was at the house with the approval of a person who was not defendant.  It noted that "the informant's statements contained in the affidavit did not indicate that someone other than [petitioner] let the informant into the house, or that anyone else besides [petitioner] had authority over the house." (*Id.* at 5, PageID.1405).  Further, the Michigan Court of Appeals found: "Even if the confidential informant could have testified that someone other than [petitioner] had authority over the house, [petitioner] was unable to demonstrate a possible need for the informant's testimony because [petitioner] presented evidence that other people had authority to enter the house as they pleased." (*Id.*).  "[T]he informant's testimony was not the only way that [petitioner] could admit evidence of his proposed theory of defense.  Further, whether [petitioner] had exclusive possession of the drugs was irrelevant because, as previously discussed, for the purposes of a controlled substance offense, possession may be joint, with more than one person actually or constructively possessing a controlled substance." (*Id.*) (citation and quotation omitted).

Petitioner has not demonstrated that the decision of the Michigan Court of Appeals rejecting his due process arguments regarding the confidential informant was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

B. <u>Confrontation Clause</u>

The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.'  [The Supreme Court has] held that this bedrock procedural guarantee applies to both federal and state prosecutions."  *Crawford v. Washington*, 541 U.S. 36, 42 (2004).  In *Crawford*, the Supreme Court divided out-of-court statements into two categories: those that are "testimonial" and those that are not.  *Id.* at 50-69.  The Court identified testimonial hearsay as the "primary" concern of the Confrontation Clause.  *Id.* at 53.  Testimonial out-of-court statements by a witness is barred under the Confrontation Clause, unless (1) the witness was unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable.  *Id.* at 68.

The Michigan Court of Appeals found that the confidential informant's statements to the police were testimonial.  (Op. at 5, ECF No. 13-17, PageID.1405).  It further found that a portion of Detective Frias's testimony regarding the confidential informant's statements violated petitioner's rights under the

-23-

Confrontation Clause.  The court noted that, in the context presented, the testimony "did not establish why the police took certain actions; instead, at the time the detective lieutenant testified, the only logical purpose for which the confidential informant's statements were offered was to prove that [petitioner] sold drugs at that house."  (Op. at 6, PageID.1406).

Violations of the Confrontation Clause are subject to harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).  In conducting this analysis, the court may consider a number of factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.*  Constitutional errors are deemed harmless on habeas review unless the petitioner establishes that they " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

The Michigan Court of Appeals held that the Confrontation Clause violation was harmless error:

> As previously discussed, the evidence against [petitioner] was substantial, and the testimony regarding the confidential informant's statements would not have changed the outcome of the case.  Moreover, the testimony regarding the confidential informant's statements was brief, and in light of the rest of the evidence against defendant, it was not particularly damaging. *See People v. Borgne*, 483 Mich 178, 199-202; 768 NW2d 290 (2009) (finding that where the evidence against defendant is substantial, and the error is only minor, the defendant does not establish plain error affecting substantial rights).  Thus, the trial

court did not plainly err when it admitted the detective lieutenant's testimony.

(Op. at 6, ECF No. 13-17, PageID.1406).

The decision of the Michigan Court of Appeals finding that that the Confrontation Clause violation was harmless error is entitled to AEDPA deference. *See Miller v. Colson*, 694 F.3d 691, 699-700 (6th Cir. 2012) (state appellate court finding of harmless error entitled to AEDPA deference). Thus, this Court "may not grant [Petitioner]'s habeas petition ... if the state court simply erred in concluding that the State's errors were harmless; rather, habeas relief is appropriate only if the [state court] applied harmless-error review in an 'objectively unreasonable' manner." *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003).

Petitioner's reliance on the Sixth Circuit's decision in *United States v. Hearn*, 500 F.3d 479 (6th Cir. 2007) (Petitioner's Brief at 42-44, ECF No. 2, PageID.72-75) is misplaced. *Hearn* was a decision made on a direct appeal rather than a review of a state court decision under 28 U.S.C. § 2254 and, as previously indicated, circuit court precedent is not "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Petitioner has not carried his burden under 28 U.S.C. § 2254(d). I find that that the arguments presented in Ground II do not provide a basis for habeas corpus relief.

## III.    Prosecutorial Misconduct

Ground III is petitioner's argument that his Fourteenth Amendment right to due process of law and a fair trial were violated, through multiple acts of prosecutorial misconduct, "where the state impermissibly used confidential informant information

given to police, as direct evidence of [petitioner's] guilt of his crime charge, without producing this informant during trial; and the state improperly questioned [petitioner] in a manner that was unprofessional, improper, intimidating and highly prejudicial, contrary to *Berger v United States* and *Donnelly v DeChristoforo*." (ECF No. 1, PageID.5; *see also* Petitioner's Brief at 46-52, ECF No. 2, PageID.76-82).

The scope of review in a habeas action regarding allegations of prosecutorial misconduct is narrow.  "Petitioner's burden on habeas review is quite a substantial one." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000).  This court does "not possess supervisory powers over state court trials." *Id.* "It is the responsibility of the state courts to police their prosecutors; [this court has] no such authority." *Id.* "Therefore, on habeas review, our standard is limited to 'the narrow one of due process.' " *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *see Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (" '[T]he appropriate standard of review for ... a claim [of prosecutorial misconduct] on a [petition for a] writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.' ") (quoting *Darden*, 477 U.S. at 181).  To be grounds for habeas corpus relief, the alleged misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181; *see Parker v. Matthews*, 567 U.S. 37, 45 (2012).

Because the Michigan Court of Appeals rejected petitioner's claims for lack of merit, petitioner faces a significant additional hurdle.  He must demonstrate that the decision of the state court "was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States" or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The Michigan Court of Appeals rejected petitioner's argument that the prosecutor violated his right of confrontation by mentioning the confidential informant's statements during closing argument.  The Court of Appeals emphasized that the test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial and that prosecutorial arguments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial.  (Op. at 6, ECF No. 13-17, PageID.1406).  In addition, a prosecutor is free to argue the evidence and all reasonable inferences from the evidence as it relates to the prosecution's theory of the case.  (*Id.*)

When viewed in context, the prosecutor's argument was not for an improper purpose.  It was argument showing "why the police took action in the case at bar." (Op. at 7, ECF No. 13-17, PageID.1407).  The statements were simply used "to summarize the actions taken by police officers, and to establish how the investigation led to defendant.  This was not an improper purpose."  (*Id.*).  "[T]he prosecutor's use of the statements during closing argument was for a proper purpose, and did not amount to a continuing violation of defendant's right of confrontation."  (*Id.*).

Petitioner has not carried his burden of demonstrating that the decision of the Michigan Court of Appeals "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

His claim of prosecutorial misconduct in closing argument based on *Berger v. United States*, 295 U.S. 78, 88 (1935) fares no better.  The prosecutor in petitioner's case did nothing that resembles the outrageous conduct of the prosecutor in the *Berger* case.  In addition, petitioner's reliance on *Berger* is misplaced because it was "decided on direct review where the Court could 'broad[ly] exercise [its] supervisory power.'"  *Henley v. Bell*, 487 F.3d 379, 389 (6th Cir. 2007) (quoting *Darden*, 477 U.S. at 181).  "The appropriate standard of review for such a claim [of prosecutorial misconduct] is 'the narrow one of due process, and not the broad exercise of supervisory power.'"  *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 642).

The Michigan Court of Appeals rejected petitioner's argument that the prosecutor committed misconduct and denied petitioner a fair trial during cross-examination when he asked petitioner whether the prosecution's witnesses lied.

> Some of the prosecutor's questions that defendant cites were not improper, such as the prosecution's questions to defendant about whether the police fabricated certain evidence.  Defendant testified to this on direct or insinuated as much.  The prosecutor is permitted to respond to issues raised by the defendant. *Brown*, 279 Mich App at 135.  With regard to the prosecution's questions about whether certain witnesses lied, "[i]t is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007).  However, because defendant's theory of the case was that the prosecution's witnesses lied and he repeatedly suggested this throughout the trial, he was not harmed when the prosecutor asked him about the credibility of those witnesses. *See People v Knapp*, 244 Mich App 361, 385; 624 NW2d 227 (2001) (noting that where the defendant maintains throughout trial that certain witnesses are lying, he does not suffer prejudice when the

prosecutor asks him if a witness lied).  Furthermore, defendant is not entitled to relief because any potential prejudice caused by the prosecution's questions could have been cured by a timely request for a curative instruction.

(Op. at 10-11, ECF No. 13-17, PageID.1410-11).  I find that petitioner has not carried his burden under 28 U.S.C. § 2254(d).  Petitioner has not demonstrated that the decision of the Michigan Court of Appeals rejecting his claim of a due process violation in cross-examination "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The decision of the Michigan Court of Appeals rejecting all the arguments in Ground III easily withstands review under applicable standards.  28 U.S.C. § 2254(d).

## IV.   Assistance of Counsel

In Ground IV, petitioner claims ineffective assistance of trial counsel in violation of his Sixth Amendment rights.  He argues that his attorney "failed to subpoena an alibi witness, and failed to investigate and interview a key witness; counsel was also ineffective for failing to object to the prosecutor's improper cross-examination of petitioner[.]"  (ECF No. 1 at PageID.5; *see also* Petitioner's Brief at 53-61, ECF No. 2, PageID.83-91).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:   (1) that counsel's performance fell below an objective standard of

reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  On the prejudice prong, petitioner "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Because the Michigan Court of Appeals decided petitioner's claims of ineffective assistance of counsel on their merits, its decision must be afforded deference under AEDPA.  *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Harrington v. Richter*, 562 U.S. at 98-102. To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012).  This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges*

*v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Woods v. Donald*, 135 S. Ct. at 1375-77; *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*). The question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 562 U.S. 115, 123 (2011); *see McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015). Petitioner must show that the state court's ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. at 103); *see also Woods v. Etherton*, 136 S. Ct. 1149,1151 (2016) (*per curiam*).

The Michigan Court of Appeals rejected all petitioner's claims of ineffective assistance of counsel for lack of merit. Petitioner's attorney "was not ineffective for failing to object to the prosecutor's questions because, as previously discussed, the prosecutor's statements did not rise to the level of misconduct or deprive defendant of a fair trial, and therefore, defense counsel was not ineffective for failing to make meritless objections." (Op. at 11, ECF No. 13-17, PageID.1411).

Petitioner's attorney was not ineffective for failing to subpoena petitioner's marketing professor at Baker College as an alibi witness. (Op. at 9-10, ECF No. 13-17, PageID.1409-10).  At trial, petitioner's attorney "called the registrar as a witness, who testified that defendant was enrolled in classes at Baker College on the day the search warrant was executed.  However, on cross-examination, the registrar testified that the attendance records showed that defendant did not attend class that evening." (*Id.*).  Petitioner argued that his trial counsel was ineffective for failing to call his professor, who allegedly would have testified that he was in class that day.  The Michigan Court of Appeals noted that counsel's decision whether to call a witness is presumed to be a strategic decision.  (*Id.* at 10, PageID.1410).  Further, there was "no evidence that the professor would have been able to verify [petitioner's] attendance at class on the day the search warrant was executed; therefore, [petitioner] fail[ed] to establish the factual predicate for his claim."  (*Id.*).  "Moreover, even assuming that trial counsel was ineffective for failing to investigate the professor and that he should have called her as a witness," petitioner was would not be entitled to relief because "he cannot establish prejudice."  (*Id.*).  The Court of Appeals found that petitioner's "characterization of the professor as an alibi witness [was] misguided.  Her testimony would not have exculpated [petitioner] by establishing that he was at a different location at the time the offenses were committed.  Rather, at most, [petitioner] alleges that the professor would have offered testimony that [petitioner] was in class on the day the police officers executed the search warrant, and that he was not in the vehicle that they followed.  The professor's testimony would have had no effect on the

documentary and forensic evidence connecting [petitioner] to the house where the drugs were found." (*Id.*).  Accordingly, even assuming trial counsel's performance was objectively unreasonable for failing to investigate and call the professor as a witness," petitioner was not entitled to relief because he could not establish "a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." (*Id.*).

Petitioner has not shown that the decision of the Michigan Court of Appeals rejecting all his claims of ineffective assistance of trial counsel was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under the "doubly deferential" standard of review.   28 U.S.C. § 2254(d)(1).

## V.    Certificate of Appealability

Even though I have concluded that petitioner's habeas petition should be denied, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to

warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's denial of petitioner's claims would be debatable or wrong. Therefore, I recommend that a certificate of appealability should be denied.

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits. I further recommend that a certificate of appealability be denied.


Dated:  February 20, 2018         /s/  Phillip J. Green
                                  PHILLIP J. GREEN
                                  United States Magistrate Judge


## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v.*

*Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).